IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EMD PERFORMANCE MATERIALS CORP., <br><br> Plaintiff, <br><br> v. <br><br> MARQUE OF BRANDS AMERICAS, LLC, <br><br> Defendant. | Civil Action No.:_____ |

## COMPLAINT

Plaintiff EMD Performance Materials Corp., by and through its undersigned counsel, asserts the following claims against Defendant Marque of Brands Americas, LLC and in support thereof avers as follows:

## THE PARTIES

1. EMD Performance Materials Corp. ("EMD") is a specialty chemical company that manufactures a number of chemicals and other products for its customers.

2. EMD is a corporation organized under the laws of the State of Delaware with its principal place of business located at 1200 Intrepid Avenue, Suite 300, Philadelphia, Pennsylvania  19112.

3. Marque of Brands Americas, LLC ("Marque") is a manufacturer, packager and distributor of skin care, personal care, and sunless tanning products.

4. Marque is a limited liability company organized under the laws of the State of Tennessee with its principal place of business located at 291 Edgewood Street, Alexandria, Tennessee  37012.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. In particular, and as it relates to the amount in controversy, at issue are unpaid invoices in the amount of $634,396 and unreturned inventory owned by EMD totaling approximately $21,084.

7. Upon information and belief, Marque is comprised of two members, neither of which is a citizen of Pennsylvania or Delaware.

8. Complete diversity exists because EMD is a citizen of the State of Delaware and the Commonwealth of Pennsylvania and Marque's members are not citizens of either Pennsylvania or Delaware.

9. This Court has personal jurisdiction over Marque because the subject matter of this litigation arises from Marque's contacts with this forum including, but not limited to, contracts in which Marque agreed that the place of performance would be at EMD's place of business in Philadelphia, Pennsylvania and that all disputes arising thereunder to be brought in courts located in Pennsylvania.

10. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c).

## THE CONSIGNMENT AGREEMENT, TERMS & CONDITIONS AND THEIR PERTINENT SECTIONS

11. EMD and Marque were parties to a Consignment Agreement wherein they agreed to the establishment of a "Consignment Inventory" of certain EMD products (hereinafter "Product") to be stored on Marque's site.

12. EMD would deliver Product to Marque in order to fill (or refill) the Consignment Inventory and, on a recurring basis, Marque would purchase Product from the Consigned Inventory.

13. In order to build and maintain the Consignment Inventory, Marque was to place consignment fill-up orders for Product by issuing a Replenishment Purchase Order ("RPO") to EMD no later than 60 days, but no sooner than 45 days, from the requested delivery date. Consignment Agreement at Section 2.2.

14. Within 5 days of receipt of an RPO, EMD could issue an order confirmation via email to Marque specifying the Product quantity and delivery date. EMD's order confirmations were necessary to render an RPO binding. Id.

15. Under the Consignment Agreement, EMD was not obligated to sell to Marque a quantity of product that exceeded EMD's production capacity. Id.

16. In fact, in the event Marque required additional products for which EMD could not supply due to its production capacity, Marque was permitted to source products from a third-party supplier. Id.

17. Marque would then withdraw Product from the Consignment Inventory for the purposes of use or consumption of the products and, once withdrawn, the products were deemed sold to Marque. Id. at Sections 4.1 and 4.6.

18. The Product in the Consignment Inventory remained the property of EMD until properly withdrawn by Marque. Id. at Sections 2.3 and 7.1.

19. The Consignment Agreement also contained certain reporting requirements. In particular, Marque was responsible for providing EMD with a 12-month rolling

forecast of the estimated quantities to be purchased by Marque in the 12-month period following October 15, 2020. Id. at Section 3.6.

20. Marque was also required to keep a Consignment Inventory Report and provide EMD copies of same within 5 business days before the end of each calendar month. These reports were to contain specified withdrawal information. Id. at Sections 3.10 and 4.4.

21. Marque was also obligated to take all steps necessary to permit EMD's representatives reasonable access to the Consignment Inventory for the purposes of verifying these reports, inspecting the condition of the consigned products, or any other reasonable purpose related to the Consignment Agreement. Id. at Section 3.10.

22. The Consignment Agreement expressly permitted EMD to unilaterally revoke, at any time in writing, Marque's authority to make withdrawals from the Consignment Inventory. Id. at Section 4.5.

23. Upon the cancellation or termination of the Consignment Agreement, parties were to conduct a joint audit and arrange for the return of the Consignment Inventory to EMD. Except in the event of a material breach by Marque, EMD would pay all charges associated with the return of the Consignment Inventory. Id. at Section 5.6.

24. Marque was obligated to inspect and examine Product at its site for defects or faulty or incorrect delivery and the delivered products would be deemed approved by Marque and free of defects if EMD did not receive written notice of defects from Marque. Id. at Section 6.2.

25. The parties further agreed that under no circumstances would EMD's liability for any claim arising out of the Consignment Agreement exceed the amount actually received by EMD from Marque for the Product that gave rise to the claim, and that EMD would

have no liability for damage to or loss of Marque's in-process commercial results.  Id. at Section 6.7.

26. Either party could terminate the Consignment Agreement immediately upon written notice in the event of a material breach that was not cured within 30 days of notice to the breaching party; a "material breach" included, but was not limited to, a delay of payment by Marque and/or Marque's unauthorized withdrawal of Product from the Consignment Inventory.  Id. at Section 8.2.

27. In addition, the parties were strictly prohibited from disclosing each other's confidential and proprietary scientific, technical, financial or business information and the terms of the Consignment Agreement.  Id. at Section 11.

28. EMD deems confidential and proprietary its product pricing, inventory levels, lead time, and allocation.

29. The parties' relationship and the purchase/sale of Product was also governed by EMD's General Terms and Conditions of Sale (the "T&Cs") which were annexed to the Consignment Agreement and incorporated therein.  T&Cs, Consignment Agreement at Annex 4.

30. Pursuant to the T&Cs, EMD could withdraw from the contract if it became apparent that Marque was not creditworthy, such as where payments by Marque stopped.  Id.; T&Cs at Section 3.6.

31. Further, in the event of a delay of payment by Marque, EMD was entitled to charge interest on all amounts unpaid at the maximum rate permitted by applicable law, in any event at least 8% per annum above the published Bank of America prime rate, and to terminate orders or suspend further deliveries to Marque.  Id., T&Cs at Section 4.5.

32. Finally, the T&Cs obligate Marque to indemnify EMD and its representatives for any claims, damages, losses, costs or expenses, including attorney's fees, arising from Marque's breach of the T&Cs. Id., T&Cs at Section 5.4.

## EMD'S MAY 14 NOTICE LETTER

33. On May 14, 2021, EMD provided written notice to Marque that EMD was revoking Marque's right to make withdrawals from the Consignment Inventory.

34. EMD revoked such authorization due to Marque's failure to timely pay several outstanding EMD invoices for Product.

35. In its May 14 letter, EMD also:

    a. demanded adequate assurances relating to Marque's ability to perform, including assurances regarding its financial ability to perform its obligations under the Consignment Agreement by May 17, 2021;

    b. demanded that Marque pay the then delinquent invoice amounts;

    c. noted that several additional invoices would be due on May 17, 2021;

    d. provided Marque 30 days to cure its material breaches;

    e. demanded Consignment Inventory Reports as well as accurate and timely forecasting pursuant to the terms of the Consignment Agreement; and

    f. notified Marque that its failure to cure would result in the Consignment Agreement being terminated effective on the 31st day after the notice or, at the latest, June 14, 2021.

36. Marque did not provide the requested assurances regarding its financial ability to perform under the Consignment Agreement.

37. Marque did not pay the delinquent invoices or cure any breach prior to June 14, 2021.

**MARQUE'S JUNE 8 LETTER**

38. Rather, on June 8, 2021, Marque responded to EMD's May 14 letter rejecting each and every one of EMD's claims/demands.

39. In particular, in its June 8 letter, Marque contended that:

    a. EMD's demand for adequate assurances was improper;

    b. EMD had no immediate right to terminate the Consignment Agreement arising from Marque's failure to provide adequate assurances as EMD must delay any termination until the 30th day after the notice or, at the latest, June 14, 2021 pursuant to Section 8.2 of the Consignment Agreement;

    c. EMD's revocation of Marque's authorization to withdrawal of consigned goods violated the Consignment Agreement;

    d. EMD remained obligated to meet Marque's product requirements under the Consignment Agreement;

    e. EMD's failure to fulfill Marque's RPOs on April 16, April 26, and June 4, 2021 constituted a breach of the Consignment Agreement;

    f. Marque was entitled to immediately terminate the Consignment Agreement and to withhold payments to EMD for amounts due and owing as a setoff or recoupment of damages arising from EMD's alleged breach of the Consignment Agreement;

    g. Marque was not obligated to return any of the Consignment Inventory; and

    h. EMD waived any limitation of Marque's remedies or damages under the Consignment Agreement by engaging in "bad faith" conduct when it refused to fulfill Marque's product requirements and feigned a breach of the Consignment Agreement.

## EMD'S JUNE 11 LETTER

  40. On June 11, 2021, EMD responded to Marque's June 8, 2021 letter.

  41. In this letter, EMD reiterated the points in its May 14 letter and added that:

    a. EMD had the unconditional right to revoke Marque's authorization to withdrawal of consigned goods under the Consignment Agreement;

    b. Upon EMD's revocation of its authorization for same, any withdrawal of products by Marque from the Consignment Inventory would constitute a material breach of the Consignment Agreement and a conversion of EMD's property;

    c. Marque was obligated to pay all outstanding invoices to EMD in the amount of $634,396.00 upon the termination of the Consignment Agreement;

    d. Marque was not entitled to withhold payment for invoices as setoff or recoupment for EMD's alleged breach of the Consignment Agreement;

    e. EMD was entitled to terminate the Consignment Agreement and the return of its consigned goods; and

    f. Marque was bound by confidentiality provisions in Section 11 of the Consignment Agreement and was thus prohibited from discussing with third-parties EMD's supply of Product to the market.

  42. EMD thereby demanded that Marque:

    a. Immediately pay the total outstanding balance due to EMD in the amount of $634,396.00;

    b.  Provide a Consignment Inventory Report no later than June 15, 2021;

    c.  Arrange for and cooperate with EMD in performing an inventory audit; and

    d.  Facilitate the return of the Consignment Inventory to EMD.

  43.  Marque did not pay the outstanding invoice balance, provide the Consignment Inventory Report, arrange for the inventory audit or return EMD's Consignment Inventory.

## MARQUE'S FAILURE TO PAY INVOICES AND BREACHES OF THE CONSIGNMENT AGREEMENT

  44.  Presently outstanding and overdue are seven invoices issued to Marque for Product delivered and sold to Marque.

  45.  Marque was required to pay each invoice submitted by EMD within 60 days. Invoices at "Terms of Payment."

  46.  However, upon termination of the Consignment Agreement, or EMD's withdraw from it, all amounts outstanding are due for immediate payment by Marque. <u>See</u> Consignment Agreement, T&Cs at Section 4.7.

  47.  Thus, presently due and owing for EMD's invoices is the sum total of $634,396.00 summarized as follows:

| Invoice Number | Description | Document Date | Due Date | Amount Due |
|---|---|---|---|---|
| 90767376 | Dec 2020 | 1/8/2021 | 3/9/2021 | $72,680.00 |
| 90784747 | Jan 2021 | 2/3/2021 | 4/4/2021 | $112,654.00 |
| 90802636 | Feb 2021 | 3/3/2021 | 5/2/2021 | $65,412.00 |
| 90816313 | RPO 403512 | 3/18/2021 | 5/17/2021 | $20,769.00 |
| 90815484 | RPO 403561 | 3/18/2021 | 5/17/2021 | $43,008.00 |
| 90841500 | Mar 2021 | 5/3/2021 | 7/2/2021 | $196,236.00 |
| 90853492 | Apr 2021 | 5/21/2021 | 7/20/2021 | $159,896.00 |
| Credit Memo | Rebate | | | ($36,259.00) |
| **Total** | | | | **$634,396.00** |

48. As of the date of this Complaint, Marque has failed to make any payments on the above delinquent invoices despite several demands.

49. Marque was also obligated under the Consignment Agreement to provide EMD with Consignment Inventory Reports containing withdrawal information before month's end and 12-month forecasting 5 days before each month's end.

50. Marque failed to provide the Consignment Inventory Reports and 12-month forecasting 5 days before each month's end.

51. EMD was permitted to terminate the Consignment Agreement upon written notice if Marque failed to cure material breaches within 30 days.

52. EMD gave written notice to Marque of its material breaches, including the failure to pay outstanding invoices and failure to provide inventory reports and forecasting.

53. Marque failed to cure these breaches within 30 days.

54. Accordingly, the Consignment Agreement was terminated effective on June 14, 2021.

55. Upon termination, Marque was obligated to conduct a joint audit with EMD and arrange for the return of the consigned property to EMD.

56. Marque refused and failed to conduct a joint audit and return the Consignment Inventory.

57. At all times, the products in the Consignment Inventory remained the property of EMD until properly withdrawn by Marque in accordance with the Consignment Agreement.

58. Upon information and belief, Marque has withdrawn products from the Consignment Inventory without the requisite authority.

59. Furthermore, Marque was prohibited from disclosing EMD's proprietary and confidential business information to third-parties.

60. Upon information and belief, Marque has disclosed EMD's proprietary and confidential information including its product inventory levels, lead time, and allocation to third-parties in violation of the Consignment Agreement.

**COUNT I**
**(ACTION FOR THE PRICE OF GOODS UNDER UNIFORM COMMERCIAL CODE § 2-709)**

61. EMD incorporates by reference the allegations contained in each of the above paragraphs as if fully set forth herein.

62. EMD and Marque are merchants generally engaged in the business of selling, buying and trading goods of the type that are the subject of this action.

63. The parties entered into a series of contracts for the sale of Product.

64. These contracts involved Marque's submission of RPOs for certain quantities of Product, EMD's supply of Product to Marque in the form of Consignment

Inventory, Marque's withdrawal of Product from the Consignment Inventory, and EMD's invoices for the price of the goods delivered to and accepted by Marque.

65. Marque ordered and EMD delivered certain quantities of Product.

66. Marque accepted and did not reject any Product delivered by EMD.

67. EMD issued corresponding invoices to Marque for the same quantity of Product.

68. In particular, EMD issued to Marque invoices dated January 8, February 3, March 3, March 18, May 3, and May 21, 2021.

69. Despite several demands, Marque has failed to pay these invoices.

70. Marque currently owes a total amount of $634,396.00 to EMD for these invoices.

## COUNT II
### (BREACH OF CONTRACT)

71. EMD incorporates by reference the allegations contained in each of the above paragraphs as if fully set forth herein.

72. As set forth above, EMD and Marque entered into a valid written Consignment Agreement that incorporated the T&Cs.

73. EMD performed all its obligations under the Consignment Agreement and T&Cs.

74. As more fully described above, Marque materially breached the Consignment Agreement and T&Cs by failing to pay outstanding and due invoices, failing to provide inventory reports, failing to provide timely and accurate forecasting, failing to return consigned goods, withdrawing goods from consignment without EMD's authorization, and disclosing EMD's proprietary and confidential business information to third-parties.

75. As a direct and proximate result of Marque's breaches, EMD has suffered damages.

## COUNT III
### (CONVERSION)

76. EMD incorporates by reference the allegations contained in each of the above paragraphs as if fully set forth herein.

77. EMD revoked Marque's authorization to make withdrawals from the Consignment Inventory via letter on May 14, 2021 pursuant to Section 4.5 of the Consignment Agreement.

78. The products in the Consignment Inventory are not the property of Marque, but rather, remain the property of EMD pursuant to the Consignment Agreement.

79. Marque had knowledge that the products in the Consignment Inventory remain the property of EMD, as opposed to Marque.

80. Notwithstanding such knowledge, Defendant has refused to return such property despite several demands by EMD for same.

81. Alternatively, Marque has withdrawn Product from the Consignment Inventory without the authority to do so.

82. Under either of the above circumstances, Marque has unlawfully taken possession of property which is legally owned by EMD, and, despite several demands, has failed and refused to return such property to EMD.

83. As a result, Marque has intentionally deprived EMD of its right to ownership of the products in the Consignment Inventory without EMD's consent and without lawful justification.

## PRAYER FOR RELIEF

WHEREFORE, EMD respectfully requests that the Court enter judgment against Marque and in EMD's favor:

    a.    For the price of goods in the amount of $634,396.00;

    b.    For damages for breach of the Consignment Agreement and T&Cs;

    c.    For damages for the conversion of EMD's Consignment Inventory;

    d.    Declaring the Consignment Agreement terminated effective June 14, 2021;

    e.    Requiring Marque to provide to EMD an accounting of the Consignment Inventory;

    d.    Requiring Marque to return EMD's Consignment Inventory;

    e.    For contractual, prejudgment and post-judgment interest;

    g.    For EMD attorneys' fees and costs; and

    h.    For such other and further relief as this Court deems just and proper.

Respectfully submitted,

*Jeffrey A. Carr*
Jeffrey A. Carr (PA I.D. No. 82716)
Martha E. Guarnieri (PA I.D. No. 324454)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103-2799
215.981.4000
jeff.carr@troutman.com
martha.guarnieri@troutman.com

Dated:  July 8, 2021